Good morning, Your Honors. May it please the Court, my name is Michael Philippi. I'm Deputy County Counsel for Monterey County and I represent the defendant, in the middle of the time, Rodriguez. We've asked the Court to look at the District Court's decision with regard to a decision in the Motion to Disseminate Judgment. We're contending that the District Court erred in the analysis when it looked at the cost of a qualified community. The Court seemed to stop at the decision of saying, well, there's a dispute factually as to whether or not we can say as a matter of law there was excessive force, or there was a reasonable length of detention, or there was a Fourth Amendment violation in search of the wallet. The next step of that analysis, with regard to qualified community, would have been to say, okay, we're going to give the plaintiff the benefit of the doubt on the questions with regard to fact, which is the standard for a research attorney review, but then we have to again, with a reasonable piece of concern, say, I believe my actions fall within the law. To do that, you also have to look at whether or not there was... No, I put an answer in here and there was no fact question. I mean, there was no report of a crime, certainly no crime or violence. There was a 9-1-1 call of a suspicious person inside a house. Suspicious person inside the house? That's not a crime. No, it's not a crime, but... Inside the house, right? Well, the point is, an officer's going to respond to a 9-1-1 call. You get some... Certainly, certainly. I could respond to a 9-1-1 call, but the fact that somebody makes a 9-1-1 call doesn't enhance the facts in any way. In fact, the crime is the caller said something that looked like a crime. Just some guy outside the house, the way you and I might be around our houses, right? So, there's absolutely nothing like that. And then that officer approaches Mr. Aquino and he does nothing suspicious. He does nothing illegal. There's no evidence or anything like that. And the next thing he knows, Mr. Aquino's on the ground, losing consciousness. I don't know why you're here. I mean, why are you opening this case? I'm a little baffled. Because the district court didn't complete the analysis with regard to... Well, the court didn't complete it. I just don't see why there's no complaint. The idea of this shouldn't be violence. You're attacking people outside their own houses. You're not sticking them. I'm talking. Maybe you want to just waste your time. No, I don't want to waste my time. Well, that's what you're doing. We are here at DeNovo Review. So, it doesn't really matter what the district court said exactly. What matters is whether your clients are actually entitled to qualified immunity. And so far, you haven't told us why they are. All right. Under these steps, I was kind of talking, but it came up to nothing. Under qualified immunity, if the law is not clearly established, the officer is there on the benefit of the doubt. It is a reasonable officer who can believe his or her actions fall within the law. Even if there was saying that... But we don't know what the law is. What you haven't told us, what it was that the reasonable officer saw, that would have justified knocking down Mr. Clayton and then locking him up in a police car for half an hour. What is it? I mean, stop talking. All right. So, halfway through the argument, you haven't come up with a single thing? He responds to a 911 call. He's directed to the house, which was also identified in the 911 call. He goes on the property. As he's determining whether or not there's any signs of forced entry, someone inside the house closes the blinds. He decides at that point he's at risk. He's going to withdraw. Someone from the house comes out that matches the 911 call individual and... And asks if he needs help, right? I mean, what criminal comes out and asks the police what they need? Well, if you're trying to divert the attention of the officer so your compatriots can get away or a little child can be slaughtered in the back bedroom, that's a perfectly good way to defer that person's attention. But why is it that you really think that they are close inside and there's time going on? Why wouldn't the reasonable officer call for backup? Backup was on the way. And wait for backup? To deal with a situation other than physically attacking a homeowner on the outside of his own home? Well, you could... If it happened to you, would you feel this was justified? If it happened to me, I would have given him my identification. But was the officer either given his identification? No. The officer or the individual pulled out a wallet and pulled out a card and held out a card that said, This is my identification. The officer tried to inspect that identification. He withdrew it. So under the totality of circumstances, the officer is... Withdrawing the identification is a justification. I mean, there's nothing legal. I mean, the officer can look at the NID in his hand. Doesn't have to take it. He wasn't given that opportunity. He could say, let me take it. Well, how bad is he? And implying, let me have a look at the NID. And instead, the individual withdrew the ID. And under the totality of the circumstances, the officer at this point has reason to believe that. I mean, I can't believe this. I believe that he is entitled to... He was in the police car for less than half an hour. But even if he was in the police car for half an hour, the courts have already determined... I'm sorry. Let's focus on that. He says half an hour. Okay. Okay. And you said you'll give the plaintiff the benefit of doubt as to the facts, right? As to the violation, yes. As to all facts. I mean, if that is true as facts, we have to assume plaintiff's facts. Okay. So why are you arguing with me when I say half an hour and you say it was less than that? Well, what is the significance of 20 minutes? Well, the courts have said... He's directly on point where the court has said 25 minutes is not an excessive amount for a detention. But he said it was half an hour. So don't we have to give him the benefit of the facts at this stage in the litigation? There are other cases that you can go farther than that. Let's say you can be put in a police car, you can be transported across town and presented for identification with somebody else. But my question is, I said half an hour. If you dispute that, you must have had some reason for doing it, some justification. We have to accept, for purposes of this appeal, it's half an hour. Okay. Not okay. Yes or no? Yes. Okay, so why did you dispute this? Why, when I said half an hour, did you think it was appropriate at this level, in this argument, to dispute half an hour? My apologies, there is... I'm asking you, why did you do it? What is the significance of it? There is a CAD report, which is generated by... I'm sorry? A CAD report is a radio transmission that logs the radio transmissions from the point of a 911 call to the point that the entire situation is cleared and then shows that it was less than half an hour. So you want us to dispute and you want us to... That was my error, Your Honor. I apologize. Counsel, I want to ask you about the District Court characterizing the case. I got the opinion it stemmed from a physical seizure and you didn't refer to it by name, but I know you know the case, the Gallagos case. Yes. And the District Court judge cited it several times in the opinion. And what I want to know is, do you think the District Court judge didn't give proper weight to the Gallagos case or misapplied it in some way? I think the Court didn't give it a proper weight. I think that in that situation, you had an individual who, as I've referred to, is stopped, transported across town for a lengthy period of time, is in handcuffs, was stopped at gunpoint, and was determined not to be the individual who was trying to bring him to the house, so was transported back to his vehicle, which took a substantially longer period of time. It was a substantially more intrusive stop, and yet the Court said that that's not a violation of the Fourth Amendment. And here we've got a situation where an officer responds to a 911 call. It's not his decision to make the stop. He responds to the 911 call. An individual that matches the description shows up out of the house. There's an exchange. He's told he's being detained, and then he resists the detention. At that point, it's no longer a detention. It's a resisting arrest situation. The officer then... I'm sorry, why was he being detained? So that the officer could complete the investigation as to whether or not he would actually be arrested or not. This was before they had the confrontation. I'm sorry for saying your name. He didn't walk away. He didn't walk away. He didn't... I'm just wondering, what has he done to justify leaving him in the police car? I mean, he says you're detained, OK? He doesn't do something that's inconsistent with being detained. The officer wants to place him in the handcuffs for his safety, because his backup has not arrived at that point. The individual was resisting the handcuffs, and so at that point... He says he just fell. No, but I don't... I think he disputes that he resisted being handcuffed, doesn't he? I thought he did. OK, so again, why are you doing this? Why are you arguing, after you concede, after you state the legal framework, that we accept the plaintiff's facts, we accept the plaintiff's facts? Why are you now arguing things on the other side, as he goes to sue them? Is that professionally appropriate? Is that being carried over to the court? I believe that the analysis for qualified immunity still requires the court to make a finding that says the officer was not reasonably justified in doing his actions. But we have to accept the facts on the ground as plaintiff's alleges them. The plaintiff says, I comply. Why are you arguing he didn't comply? How can you stand there, as an officer of the court, and... I'm sorry? I'm not saying he didn't comply. He just said exactly that. You know, with this tape... OK. OK, so you should go back and look at it, and I think you should have your supervisor look at this. You understand? I do. I'm directing you to... This is lunch. I couldn't hear you. This is lunch. Susan what? Lunch, B-L-I-T-C-H. OK, you will ask her to watch this argument and see whether making the kind of argument she does in court, she thinks is appropriate. OK. OK. We'll hear from the other side. My name is Lisa Gorge. Is he always like that? He is. My name is Nina Pagiani. I'm here for the Plaintiff's Appeal. It was the keynote. I'm very moved by some of what I heard today. It's kind of frustrating. It's our position that appellants' appeal is frivolous and serves only to delay justice to the Plaintiff's Appeal. Are you seeking attorney's fees for that appeal? We are. My reasons for stating so is that jurisdiction is defective. As explained more fully, an appeal is briefed for a variety of reasons, including that the district court found that there were disputed facts that required assessment by a jury and it would be, therefore, premature to make the final decision on qualified immunity. I think the court also implied that if it accepted all of the facts in Plaintiff's favor, it would not find his officer's conduct reasonable. So there's... I don't believe there's jurisdiction at this stage. I don't think there's jurisdiction to assess the search of the wallet claim because I think that issue was waived. I don't have any trouble understanding the jurisdictional argument. I mean, they're entitled to acceptance of Plaintiff's facts. I realize they don't do that, but they're entitled to accept Plaintiff's facts. As they still say, there is no disqualified immunity in the jurisdiction here. I understand how you can argue there's no jurisdiction. Well, I think that's a good point, Your Honor, and I think there's... It's a formal question. It's a question? Okay. I mean, how can there not be jurisdiction? I mean, we can say they're wrong, and I think they are wrong themselves, but the fact that they are wrong doesn't deprive us of jurisdiction. Well, I think in Acta v. Portland and in Johnson v. Area Rapid Transit to the Ninth Circuit cases and also in Johnson v. Jones, which is a U.S. pre-approved from 1995, there is an indication that an interlocutory appeal on a denial of qualifying immunity that was based on disputed facts in the categories of what the officer believed or perceived and in the category of what actually transpired between the officer and suspect, that those types of fact determinations were so highly fact-specific and subject to credibility determinations and inferences that they were more appropriately decided by a jury. So your opposing counsel has made such arguments and then muddles this up, but to the extent he's also arguing that assuming plaintiff's facts, there wouldn't be qualified immunity, which I think probably charitably read his briefs, also argue we have jurisdiction over that type of argument, don't we? Um, sure. I mean, I think that... It's probably a little separate by the magnitude of section. Okay. You wanted to pick up this point anyway, if you... Um, I think that the jurisdiction issue for us is more something that we thought contributed to our sentiment that this appeal was ill-advised. There was just one more reason it was ill-advised, because there are indications that jurisdiction is premature. I think it's the same piece coming out of the appeal. Okay. And then the second reason we think the appeal is frivolous is that the law setting forth legal parameters for a Terry stop has been very well-developed, well-founded, and fairly established by this circuit in addition to other circuits. So, can I ask a question about that? So, I really only have one question for you that I'd like you to help me with, which is this Gallup-Gallegos case. Um, I think you could distinguish your case from Gallegos such that maybe we could say there is a constitutional violation here, when there wasn't in Gallegos, but I'm having trouble understanding why Gallegos doesn't create enough uncertainty in the law to have there be qualified immunity on the investigatory stop part of your case. You have a lot of other claims, but on the one part about whether the police could detain him for long enough to figure out if he was the right person or was it a criminal, it seems like Gallegos was very broad in saying what police could do to investigate something and detain someone in the meantime, and I wonder if it creates enough uncertainty in the law that there would be qualified immunity on that claim. And I don't think it does, Your Honors, because Gallegos is one of dozens of cases that talk about when an officer may exceed the traditional parameters of a jury stop. So, can you point to a case that has facts that are more similar to this one than Gallegos? Gallegos is somewhat similar. Actually, it's not similar. In Gallegos... Also, can you point to another case in Gallegos that will help me see why you think they can't stop him, Alexis? Why they can't stop him? Johnson v. Campbell would be the best. It's out of the Third Circuit. And how about this court? This court would be U.S. v. Del Vizo. U.S. v. Ricardo D. Washington v. Lambert. U.S. v. Miles. Can you tell me why you think they're more similar to the facts here than Gallegos? Yes, because in cases, all of the cases where intrusive means have not been allowed are more like this case. In other words, Del Vizo. Del Vizo involves a case where a car is pulled over and the suspects are ordered out at gunpoint. Del Vizo's ordered out at gunpoint, told to get off the ground. Had there been a 911 call in Del Vizo? Del Vizo, the suspects had been under surveillance for drug trafficking. And in Del Vizo, the court found that those tactics constituted an arrest because they exceeded the bounds of theory. So in Del Vizo, there was more than an attempt, there was actual evidence, evidence of an actual specific crime? They had been surveilling Mr. Del Vizo because they thought he was part of a drug trafficking program. But, and when they pulled him over, they ordered him out of the car at gunpoint. I think told him to get on his knees and the ground and cuffed him. The court found that was a de facto arrest. That was not a terrorist attack because there was no indication that Mr. Del Vizo was armed, hadn't just been, there hadn't just been a violent crime. There wasn't information suggesting that he was about to commit a violent crime. There was no information that he was carrying a weapon. And because we did not have... I'm looking at Del Vizo, so I apologize for not remembering exactly, but it seems like the Del Vizo issue was, it says, there was no evidence suggesting that Del Vizo was particularly dangerous, especially once he had stepped out of a van and been frisked and was lying on the ground. So I'm not sure the court thought it was improper to stop him, the issue was just that after that they drew their weapons. They did not think it was improper to stop him. So how does this help you with the seizure of your client here for some time while they investigate? I mean, no weapons, right? There is no authority that I have found in this case about a circuit's precedent or any other circuit's precedent that allows a citizen to be stopped and held just because an officer needs to investigate something. So that's kind of, I mean, isn't that what happened with him in Gallegos? Well, no. Gallegos was a situation where the officers made a, a violent crime had occurred, first of all, and minutes later the officers in a chopper see a man walk out of the victim's home or near the victim's home, get in a car and flee. The man matches the description of the man he tried to break into the house. So the officers have reasonable suspicion to stop the person. There's been a report by a victim of an actual crime, a violent crime. Somebody's trying to break into my house. I have a restraining order against them. I fear for my life and limb. After that report, the officers who are overhead see a man matching the description, fleeing in, I think a pickup truck, or a vehicle was driving, right? It turns out he was driving with a person on him. He was driving. The crime should not be reported. If the crime is reported, life and limb. So the officers have reasonable suspicion that criminal activity is foot. They think this man is part of it. So they stop him, and they stop him by ordering him out of the truck at gunpoint. He complained, not that this wasn't a proprietary stop, he complained that those were excessive measures because I'm not armed, I'm not even the right guy. I think what the court was saying is, well, there had just been a violent crime. You were believed to be the right guy. You were believed to be fleeing, and these beliefs were all reasonable. So I think you're making a good argument about why we can say there's a constitutional violation in this case, but not that, even though there wasn't in Gallegos. But isn't it close enough that a police officer could think Gallegos meant that they could stop someone while they investigate, especially if they don't draw their guns? I mean, it's at least, it seems at least arguable to me, which I think is what qualified immunity is about. I don't think so, Your Honor, because I think Gallegos is deep and out of context. There are too many cases authored by this court that lay out the parameters for proprietary stopping. One of the students you've got to go to Gallegos, this man is outside his own house. There's not somebody that's on the highway, on the street, who's got nobody in the car. At that point, what do they do? Then they can get behind the wheel and drive off. Did they ever know at this point that he was in, that it was his house? I mean, they were following him to get this on? He came out of the house, right? He was seen crossing the street and entering the vehicle right outside of his subject's house. But in your client's case? In my client's case, it was not even a reported crime. In my client's case, you have a third party. But is he coming out of the house? My client? Yes. Yes, Your Honor, is he coming out of his house after having? Well, this is not a crime situation where you're going to enter a highway and he's got a vehicle, but is he legally involved? There's a vehicle involved in Gallegos. In this case? No. No. There is no? So it's not like he's innocent, and this is what the client wants you to respond to, right? There is not a single scintilla of evidence that my client is attempting to flee or leave. Not a scintilla. There's not a scintilla. He was attacked because he did not place the contents of his right hand, which was his military ID and his wallet, into the car. This was done. He didn't do this. And he got attacked. And my point is, in Gallegos, there's no similarity. All right. We're talking about the detention after the attempted murder attack. That's one issue. And then he gets placed in the police car, right? He's left in the car. Are there any further facts that justify that? No, because all intrusive means, any intrusive means, at a jury stop, he has to be justified. He's not getting up and running away. Right. Right. So all intrusive means on a jury stop have to be justified by the Washington v. Lambert factors or by other factors that maybe haven't been developed yet that contribute to a reasonable belief that the officer or some other party  There's just no justification on a jury stop for handcuffs, force, or restraint outside of specifically identifiable circumstances that put the officer's safety at risk or somebody else's safety. In Gallegos, I think the court did not elaborate a lot, because I don't think they saw it as a close call. And I think appellant relies a lot on dictum. But Gallegos did involve a situation where somebody, the victim caller, was feeling threatened for life in a landmine and said their restraining order was violated, and she thought her father was going to try to hurt her. So there was a sense that this person, the suspect, I guess was misidentified, but they don't know that, that this person is a threat to not only potentially the officers, but to this victim. So Gallegos is just... I think appellant's reliance on Gallegos shows how little authority there is for their position, because it is not remotely close to these things. Do we have enough for us to continue? We're out of time. We're out of time. Oh, okay. Well, thank you very much. Thank you. Katie Spacer. Sorry to interrupt you. Mr. Pruitt, can I see that the county counsel, Mr. Charles McKee, will have him watch on any of this work? Thank you.
judges: Kozinski, Friedland, Bennett